The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. Plaintiff as an appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. However, defendants as an appealing party have shown good grounds to amend the Opinion and Award with regard to finding plaintiff's brachial plexus injury to his left shoulder compensable. Although the Deputy Commissioner considered the medical records of Dr. Pare in reaching her decision, defendants never stipulated to them and they were not part of the evidence in this case.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties stipulated that all parties are properly before the North Carolina Industrial Commission and that the Commission has jurisdiction over the parties and over the subject matter.
2. At the time of plaintiff's alleged injury giving rise to this claim, on or about 18 January 1995, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Defendant-employer was insured and State Farm Insurance Company was the compensation carrier on the risk.
4. The deposition of Michael Gwinn, M.D. is stipulated.
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts and modifies the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of plaintiff's injury which is the subject of this claim, plaintiff was an independent subcontractor who contracted with Hunter Residential Specialists, Inc. to perform framing, boxing and siding on a house under construction in Cary, North Carolina. Pursuant to N.C. Gen. Stat. § 97-19 (1993) as it existed at the time of plaintiff's alleged injury, plaintiff was an uninsured principal contractor and was a statutory employee covered under the Workers' Compensation Act.
2. At the time of the hearing, plaintiff was thirty years old, had not completed high school, and had had no other training or schooling. Plaintiff had worked as a carpenter since the age of fifteen.
3. While working as a sub-contractor for the defendant-employer, plaintiff was paid a set price for each job. He earned between $600-$800 per week, depending on the job performed, but plaintiff paid two other workers out of the proceeds. Based on calculations derived from the Form 22 (Defendant's Exhibit #1), and taking into consideration that these amounts received by plaintiff were divided with two other workers, plaintiff's average weekly wage was $189.89, which yields a compensation rate of $126.66.
4. On 26 January 1995, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer when plaintiff and two co-workers were setting a steel I-beam at the construction site. Plaintiff and Jack McParland were holding one end of the beam, while Stanley Jackson was holding the other end. The I-beam weighed approximately three hundred (300) pounds. Because of ice on the wall, the beam on Stanley Jackson's end slipped, causing the beam to hit plaintiff square on top of his left shoulder. Plaintiff felt immediate pain from his left shoulder down to his fingertips, and his left hand went numb. Plaintiff completed the work day, but did no physical labor; he supervised the other workers.
5. Later that evening, plaintiff's thumb and index fingers began to turn blue. He sought medical attention at Betsy Johnson Memorial Hospital where he presented with sharp pains in his left upper arm, decreased sensation in his left thumb, index finger, and part of his middle finger. Plaintiff had been experiencing these type of symptoms three to four days before the injury by accident of 26 January 1995.
6. X-rays taken on the emergency room visit of 26 January 1995 revealed a foreign body situated in the soft tissue of plaintiff's left forearm. Said foreign body was in no way related to the injury by accident of 26 January 1995. Plaintiff was treated at the hospital and referred to a neurosurgeon.
7. Prior to his injury by accident of 26 January 1995, plaintiff had a history of ruptured discs in his back and neck. Plaintiff had undergone back surgery previously, but had not had any surgery in relation to his neck. There is no medical evidence in the record to support any findings that plaintiff's injury by accident of 26 January 1995 in any way exacerbated either of these conditions.
8. On 5 February 1995, plaintiff was again seen at Betsy Johnson Memorial Hospital. Plaintiff reported that his fingers had been turning blue and cold during the past week and he had developed a severe burning pain in his thumb and index finger. Plaintiff was diagnosed with a cyanotic left thumb and index finger and was released without restrictions.
9. On 6 February 1995, plaintiff presented to the emergency room at the University of North Carolina Hospital. Plaintiff complained of pain in his left index finger and thumb. Laboratory and toxicology reports indicated that plaintiff tested positive for cocaine, amphetamines and opiates. One of the medications plaintiff was taking for pain may account for the positive screen for opiates, but none of the medications plaintiff was taking for his injury would account for the cocaine and amphetamines. Plaintiff was diagnosed with possible thrombosis or Reflex Sympathetic Dystrophy and referred to Dr. Elizabeth Phelan for a rheumatology consult.
10. Dr. Phelan diagnosed plaintiff with hypersensitivity vasculitis due to drug use, vasculitis due to immune complex with hepatitis B, cryoglobulinemia due to hepatitis C and less likely, systemic vasculitis. Dr. Phelan did not give plaintiff any work restrictions.
11. Plaintiff's use of cocaine, amphetamines and opiates, either intravenously or otherwise, was the most probable cause of plaintiff's symptoms associated with his vasculitis. There is no medical evidence in the record to support a finding that the injury by accident plaintiff sustained on 26 January 1995 was related to his condition of vasculitis; the vasculitis from which plaintiff suffered was neither caused nor exacerbated by his injury by accident.
12. On 22 February 1995, plaintiff was seen for an independent medical examination by Dr. Michael Gwinn, who is board certified in physical medicine, rehabilitative medicine and electrodiagnostic medicine. At this time, plaintiff had a burning pain in his posterior neck, pain in the volar forearm and pain between the thumb and index finger. Plaintiff had a hypersensitivity to cold in left finger digits one through three and he was unable to bend his left thumb without extreme pain.
13. After an examination, Dr. Gwinn diagnosed plaintiff with a possible left cervical radioculopathy, versus a peripheral nerve disorder such as pronator teres syndrome, anterior interosseous syndrome, or brachial plexitis. In Dr. Gwinn's opinion, none of these conditions were easily explainable with a blow to the arm, except the brachial plexitis, which could occur if plaintiff had been hit on top of his shoulder. Dr. Gwinn opined that plaintiff's symptoms, if they preceded the injury by accident, would be associated with a pre-existing vasculitis and not due to the injury by accident. He also felt the foreign body lodged in plaintiff's arm may be playing a significant role in plaintiff's symptoms.
14. Plaintiff was seen by Dr. Michael Pare, a neurologist, but the records of Dr. Pare are not in evidence.
15. Based on the credible evidence in the record, the undersigned finds that since plaintiff was experiencing sharp pain in his left arm, and numbness in his first three fingers on his left hand before his injury by accident of 26 January 1995, these symptoms are related to plaintiff's vasculitis, drug use, or some other cause, and are not related to, nor were they exacerbated by, the injury by accident. Plaintiff has failed to meet his burden to show that he sustained a brachial plexus injury as a result of the injury by accident of 26 January 1995.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 26 January 1995, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer. However, no competent medical evidence supports a causal connection between the injury and plaintiff's brachial plexus injury to his left shoulder.Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980). Further, plaintiff's vasculitis and symptoms associated with it are not related to, nor exacerbated by, the injury by accident of 26 January 1995. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for compensation for his brachial plexus injury or for his vasculitis and symptoms associated with it must be, and hereby is DENIED.
2. Each side shall pay its own costs.
This the ___ day of January 1999.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER